UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| UNITED STATES OF AMERICA, | |
| | **22-CR-00020-PGG** |
| -against- | |
| ALEXANDER GULKAROV, | |
| Defendant. | |

**MEMORANDOM OF LAW IN SUPPORT OF MOTION BY ALL DEFENDANTS
TO DISSMISS PART OF COUNT ONE OF THE INDICTMENT**

Date: October 18, 2022
New York, NY

OFFICES OF FREDERICK P. HAFETZ
Frederick P. Hafetz
Noah E. Shelanski
420 Lexington Avenue #2818
New York, NY 10170

*Attorneys for Defendant*
*Alexander Gulkarov*

## **TABLE OF CONTENTS**

TABLE OF AUTHORITIES ................................................................................................... ii

PRELIMINARY STATEMENT ........................................................................................... 1

FACTS ..................................................................................................................................... 1

A.  Statutory and Regulatory Background................................................................. 1

B.  The Indictment ....................................................................................................... 3

C.  The Government's Theory ...................................................................................... 3

D.  Bill of Particulars .................................................................................................. 4

ARGUMENT
     INTENTIONAL FALSE STATEMENTS TO THE INSURANCE
     COMPANIES AS TO THE OWNERSHIP AND CONTROL OF
     THE NO FAULT PCS IS AN INSUFFICIENT BASIS TO
     ESTABLISH HEALTH CARE FRAUD AND THAT PART OF
     COUNT ONE SHOULD BE DISMISSED ............................................................7

CONCLUSION....................................................................................................................18

## <u>TABLE OF AUTHORITIES</u>

*Aetna Life & Cas. Co. v. Nelson*,
    67 N.Y. 2d 169, 175 (1986) ............................................................................ 1

*BSP Agency LLC v. Katzoff*,
    632 B.R. 448, 2021 Banks. Lexis 21 (U.S. Bankruptcy Court, S.D.N.Y. 2021) ........... 13

*Fountain v. United States*,
    357 F.2d 250 (2d Cir. 2013) ........................................................................... 9

*Montgomery v. Daniels*,
    38 N.Y. 2d 41 (1975) .................................................................................... 1

*O'Brien v. Argo Partners, Inc.*,
    2d F. Supp. 2d 528, 535 (E.D.N.Y. 2010) ...................................................... 13

*Starr v. United States*,
    816 F.2d 94, (2d Cir. 1987) ............................................... 9, 10, 11, 13, 15

*State Farm Mut. Auto. Ins. Co. v. Mallela*,
    4 N.Y. 3d 313 (2005) ............................................................................ 14, 16

*United States v. Binday*,
    804 F.3d 558,570 (2d Cir. 2015) ............................................................ 9, 10, 17

*United States v. Davis*,
    U.S. Dist. Lexis 122643 (S.D.N.Y. 2017) .................................................. 12, 13

*United States v. Frank*,
    156 F. 3d 332 (2d Cir. 1998) ............................................................... 10, 11

*United States v. Gabinskaya*,
    829 F. 3d 127 (2d Cir.  2016) ................................................................... 15

*United States v. Novak*,
    443 F. 3d 150 (2d Cir. 2006) ............................................................ 10, 12, 13

*United States v. Paccione*,
    949 F.2d 1183 (2d Cir. 1991) ............................................................. 10, 13

United States v. Pierre,
    22 Cr. 19 (PGG) .......................................................................................... 18

*United States v. Pirro,*
　212 F. 3d 86 (2d Cir. 2000) ................................................................. 8

*United States v. Regent Office Supply Co.,*
　421 F.2d 1174 (2d Cir. 1970) ........................................... 9, 10, 11, 13, 15, 17

*United States v. Shellef,*
　507 F.3d 82 (2d Cir. 2007) .................................................... 9, 10, 13, 15, 17

*United States v. Von Barta,*
　635 F2d 999, 1002 (2d Cir. 1980) ......................................................... 7

*United States v. Walker,*
　191 F.3d 326 (2d Cir. 1999) .............................................................. 11

*United States v. Zemlyansky,*
　945 F Supp. 2d 438 (S.D.N.Y. 2013) ...................................... 8, 9, 15, 16, 17

We respectfully submit this memorandum on behalf of all defendants in support of our motion to dismiss part of count one of the indictment.

## PRELIMINARY STATEMENT

Count One of the Indictment contains two principal theories of fraud: (i) that the defendants sought payment from insurance companies for unnecessary and excessive medical treatments, and (ii) that the defendants sought payment from insurance companies by concealing the fact that the no-fault clinics were owned and controlled by persons who were not physicians.   The defendants move to dismiss the theory of the health care fraud that is based on misrepresentations concerning the true ownership of the no-fault clinics, and to strike the allegations relating to that theory.  As is argued more fully below, that theory does not state a cognizable scheme to defraud under the federal health care fraud statute, and, accordingly, allegations concerning that theory of fraud should be stricken from the Indictment, pursuant to Federal Rule of Criminal Procedure 7(d).

## FACTS

### A. Statutory and Regulatory Background

The New York No Fault Comprehensive Motor Vehicle Insurance Reparation Act, known as the No Fault law, was enacted in 1973. § 5101, et seq. It replaced the common law system of tort lawsuits to "compensate victims of automobile accidents without regard to fault." *Montgomery v. Daniels*, 38 N.Y. 2d 41 (1975). Significantly, it "does

not codify common law principles; it creates newer and independent statutory rights and obligations." *Aetna Life & Cas. Co. v. Nelson*, 67 N.Y. 2d 169, 175 (1986).

New York law requires all drivers to buy automobile insurance. N.Y. Veh. & Traf. § 319. Under the No Fault Law an insurer is required to indemnify all covered persons ("the insureds") for reasonable and necessary medical services. N.Y. Ins. Law §§5102, 5104. An insured is entitled to reimbursement up to $50,000 for "basic economic loss on account of personal injury arising out of the use or operation of a motor vehicle." *Id.* at § 5102(b). Basic economic loss includes "all necessary expense incurred" for many types of medical treatment and professional health services. *Id.* at § 5102(a)(1).

In 2002, the Superintendent promulgated regulations giving insureds two mechanisms for recovering the costs of medical services. First, the insured can pay for medical services and obtain reimbursement from the insurer. Second, the insured can assign to his medical provider his rights under the insurance policy, enabling the provider to bill the insurer directly.  11 N.Y.C.R.R. § 65-3.11. Central to this case is a regulatory provision, added in 2001, which reads:

> A provider of health care services is <u>not eligible</u> for reimbursement under Section 5101 (a)(1) of the Insurance Law if the provider fails to meet any applicable New York State or local licensing requirement to perform such service in New York...

11 N.Y.C.R.R. § 65-3.16(a)(12) (emphasis added).

The licensing requirement at issue here is the state-law prohibition on non-doctors owning medical practices. Specifically, Business Corporation Law (BCL) § 1507 states that a professional service corporation may issue shares only to individuals who are authorized by law to practice in the state of profession in which the corporation is authorized to practice. BCL § 1508 provides that no individual may be a director or

officer of a professional services corporation unless he is authorized by law to practice in this state a profession which such corporation is authorized to practice.

### B.  **The Indictment**

Count One charges all defendants with conspiracy to commit health care fraud, alleging that they sought "to exploit insurance programs designed to protect accident victims (the No Fault Scheme)." Indictment ¶ 1.  The indictment alleges that as part of the No Fault Scheme defendants "fradulently owned and controlled more than a dozen medical professional corporations–including medical, acupuncture, and chiropractic practices–by paying license medical professionals to use their licenses to incorporate the professional corporations." *Id*. ¶ 2. The indictment alleges the defendants concealed *de facto* ownership and control of the medical professional corporations by non-medical professionals. According to the indictment, concealment of this fact operated as a fraud on the insurance companies because under the No Fault Law, insurance companies would deny all billings for medical treatment if they knew that these medical facilities were not operated and controlled by licensed medical practitioners. *Id*. ¶ 7.

### C.  **The Government's Theory**

The government's theory is: (1) the medical professional clincis (PCs) were fraudulently incorporated under New York Business Corporation Law because non-doctors actually owned the PCs; (2) under New York State law, fraudulently incorporated PCs are ineligible to receive payment for No Fault insurance claims; and (3) false representations by the PCs to the victim insurers concealed the ineligibility of

the PCs for reimbursement under New York state regulations, causing the insurers to pay the reimbursement claims when they would lawfully have refused to do so.  The government erroneously alleges that these false representations to insurers suffice to establish the intent to injure element of mail fraud.

### D. <u>Bill of Particulars</u>

On March 25, 2022 counsel for defendants Gulkarov and Israilov sent the government a letter requesting a bill of particulars (letter attached as Ex. A to Declaration of Frederick P. Hafetz, dated October 17, 2022.  Request number 14 in that letter states:

> "Specify the 'false and fraudulent pretenses, representations, and promises' alleged in the effort to defraud a health care benefit program." (Indict., par. 41).

(Exhibit A to Hafetz Declaration).

On April 12, 2022, following a telephone conference between the government and counsel for Gulkarov and Israilov about the bill of particulars request, counsel for Gulkarov sent an email to the government stating:

> "Please confirm the following:
> In response to our bill of particulars request, item 14 in our letter to you dated April 6, 2022, requesting that you specify the "false and fraudulent pretenses, representations and promises" alleged in paragraph 41 of the indictment, you stated that they are: intentional false statements in EUOs; overbilling by billing for unnecessary medical procedures (and including in some instances services not rendered); and <u>intentional false statements as to the ownership and control of the professional clinics in the certifications submitted by doctors to the insurance companies for payment to the professional corporations.</u>"

(Exhibit B to Hafetz Declaration) (emphasis added).

By email on April 12, 2022 the government responded as follows:

> "Hi Fred, I believe we stated during the call that our answers are non-exhaustive lists of examples."

(Exhibit C to Hafetz Declaration).

Later, on April 13, counsel for Gulkarov responded as follows to Mr. Andrews' April 13 email:

> "Mat
> We are not entirely clear on your response to the email that Henry and I sent to you regarding our discussion with you last week in our letter request for a bill of particulars. In our email yesterday we stated that in our telephone discussion you specified three categories of false and fraudulent statements under paragraph 41 of the indictment: intentional false statements to EUOs; overbilling by billing for unnecessary medical procedures including in some instances services not rendered; and intentional false statements as to the ownership and control of the professional clinics in the certifications submitted by doctors to the insurance companies for payment to the professional corporations.
> Are you stating that there are categories of false and fraudulent statements under paragraph 41 other than these three? If so, please specify them.
> If you are contending that there are other additional categories of false and fraudulent statements and you decline to advise us of these other alleged categories of false and fraudulent statements under paragraph 41, we will need to file a motion to compel the government to identify them."

(Exhibit D to Hafetz Declaration)

Later that same day, the government by email to counsel for Gulkarov and Israilov stated:

> "Hi Fred, the three categories of false     statements     we identified  are the most  significant  examples.  We  are not hiding anything from you. Our position is simply that we are not required to forgo pursuing other misrepresentations at trial should they become relevant. For instance, our investigation is still ongoing and

5

we may charge additional offenses. Likewise, the other 7 codefendants may raise defenses that require us to pursue additional categories of misrepresentations at trial. You are now in possession of lengthy speaking indictment and two expert reports (which we disclosed early), which explain in detail the case against your client. We also spent the better part of an hour going over the discovery and identifying relevant portions for your review. We are always available should you have additional questions."

(Exhibit E to Hafetz Declaration)


On April 15 counsel for Gulkarov and Israilov emailed the government:

"Mat

Henry and I by no means are saying that you and Tony have not been cooperative in furnishing discovery and making yourself available to discuss discovery material with us.

Our concern at this point is as follows. We asked in our request for a bill of particulars that the government specify the alleged false and fraudulent statements in paragraph 41 of count one. In the telephone discussion that Henry and I had with you about our bill of particulars requests you specified three categories of false and fraudulent statements under paragraph 41: intentional false statements to insurance companies in EUOs; overbilling by billing for unnecessary services including in some instances billing for services not performed; and intentional false statements as to the ownership and control of the professional and control of the professional corporations in the certifications submitted by doctors to the insurance companies for payment to the professional corporations.

We understand that you will be presenting various items of evidence and testimony in your effort to prove these three categories of false and fraudulent statements. However, we understood you to say in your email that these three categories of false and fraudulent statements are only examples of the categories of false and fraudulent statements that you may try to prove under paragraph 41. If you are intending at triI donal to seek conviction on the basis of false and fraudulent statements under paragraph 41 other than the three categories that you have identified to us, we are entitled to a bill of particulars on these additional categories of such statements at this time."

(Exhibit F to Hafetz Declaration)

On April 18 the government by email to counsel for Gulkarov and Israilov:

> "Hi Fred, we have identified the three primary categories of misrepresentations that we will prove at trial. As we stated before, we may supersede with additional charges and/or prove up other misrepresentations depending on the defenses raised by the seven codefendants. You have a detailed indictment, early 3500, early expert discovery, and we discussed the discovery at length. We don't believe the case law requires more at this juncture.

(Exhibit G to Hafetz Declaration)

This written exchange between the government and counsel for defendants regarding the defense request for a bill or particulars on the false statements alleged in paragraph 41 of count 1 constitute a specification by the government that there are three false statements upon which the government will seek conviction under count 1 and that one of them is, as stated in the defense April 12 letter to the government:

> "...intentional false statements as to the ownership and control of the professional clinics in the certifications submitted by doctors to the insurance companies for payment to the professional corporations."[1]

## ARGUMENT

### INTENTIONAL FALSE STATEMENTS TO THE INSURANCE COMPANIES AS TO THE OWNERSHIP AND CONTROL OF THE NO FAULT PCS IS AN INSUFFICIENT BASIS TO ESTABLISH HEALTH CARE FRAUD AND THAT PART OF COUNT ONE SHOULD BE DISMISSED

---

[1] We note that one of the three false statements particularized by the government under paragraph 41 of the indictment is "false statements to EUOs." Insofar as these alleged false statements in the EUOs alleges the EUO as a vehicle in which false statements were allegedly made to insurers as to ownership and control of professional clinics submitting reimbursement claims to insurers and that those false statements are a basis for a healthcare fraud, we also move to dismiss those statements as a basis for conviction under count one.

In determining a pre-trial motion to dismiss an indictment or portions thereof on grounds of legal insufficiency to constitute a crime, the court may consider not only the indictment itself, but also government submissions that amplify the indictment. *United States v. Von Barta*, 635 F2d 999, 1002 (2d Cir. 1980). Here, the government in a written exchange with the defense has particularized the false statements which are the basis for the fraud charge in count one. One of the three false statements specified by the government as a basis for conviction of the fraud charge is, as demonstrated below, legally insufficient to sustain a fraud charge.

The Court may dismiss a portion of a count of an indictment pre-trial on the grounds of legal insufficiency. *See, e.g., United States v. Pirro*, 212 F. 3d 86 (2d Cir. 2000). Affirming the pre-trial dismissal of a portion of a count of an indictment, the Second Circuit in *Pirro* stated:

> "As a threshold issue we must consider whether we have jurisdiction over the appeal of an order dismissing a portion of a count. In *Sanbria v. United States*, 437 U.S. 54, 69 n. 23, 98 S.Ct. 2170, 57 L.Ed.2d 43 (1978), the Supreme Court stated that there is no statutory barrier to such an appeal. Statutory authority permits a government appeal from an order of a district court dismissing any one or more counts of an indictment. See 18 U.S.C. § 3731 (1994). In *United States v. Tom*, 787 F.2d 65, 71 (2d Cir.1986), we pointed out that our circuit interprets this authority to allow an appeal of a dismissal of an allegation that could have provided a discrete basis for a conviction. We reviewed dismissals of portions of counts in *United States v. Margiotta*, 646 F.2d 729 (2d Cir.1981), and *United States v. Alberti*, 568 F.2d 617 (2d Cir. 1977).FN5

*Id.* at 88

Although the focus of *Pirro* was on whether dismissal of a portion of a count was appealable, the Second Circuit opinion obviously pre-supposes that the district court had the authority to dismiss a portion of a count. Since *Pirro* affirmed a pre-trial order

dismissing a portion of a count, the Second Circuit did not view it premature to grant a defendant's pre-trial motion to dismiss a portion of a count. And, as noted in footnote 5 to *Pirro*, other Circuit Courts of Appeals concur with this ruling by *Pirro*. *Id* at 89. See also *United States v. Zemlyansky*, 945 F Supp. 2d 438 (S.D.N.Y. 2013) court ruled on merits of defendants motion to dismiss part of a fraud count).

   The fundamental precepts of the federal fraud statutes – of which Federal Health Care Fraud is a species -- governing this case are well established.  The two essential elements common to any federal fraud offense are: (1) a scheme to defraud with the intent (2) to obtain money or property. *Fountain v. United States*, 357 F.2d 250 (2d Cir. 2013).[2]  The scheme to defraud element requires the government to prove that the defendant contemplated some actual harm or injury to the victim.  *See, e.g., Starr v. United States*, 816 F.2d 94, (2d Cir. 1987); *United States v. Shellef*, 507 F.3d 82 (2d Cir. 2007). Proof of deceit or false representations, without more, are insufficient to prove the intent to injure required to prove a scheme to defraud charge. *See, e.g., United States v. Regent Office Supply Co.*, 421 F.2d 1174 (2d Cir. 1970); see *Starr*, 816 F.2 at 94-95; *Shellef*, 507 F.3d at 108.

   Nor is it sufficient to prove an intent to injure the victim by showing "merely that the victim would not have entered in a discretionary economic transaction but for the defendant's misrepresentation." *United States v. Binday*, 804 F.3d 558,570 (2d Cir. 2015). See *Shellef*, 503 F 3d at 109; *United States v. Regent Office Supply*; *supra*.

---

[2] Although the indictment charges conspiracy to commit health care fraud, not mail fraud, the same principles that apply to the intent to injure element of mail fraud law apply also to health care fraud. *United States v. Zemlyansky*, 945 F.2d 438 (S.D.N.Y., 2013) (court applied mail fraud caselaw in adjudicating a motion addressed to both mail fraud and healthcare fraud) see *United States v. Mahaffy*, 2006 U.S. Dist. Lexis 53557 (E.D.N.Y. 2006); *United States v. Stavroulakis* 952 F.2d 686 (2d Cir. 1992).

Rather, it is well established in the Second Circuit that an alleged misrepresentation suffices to establish the intent to harm requisite for a mail fraud conviction <u>only</u> if the misrepresentation "went to an essential element of the bargain between the parties." *United States v. Shellef*, 507 F 3d 82, 108 (2d Cir. 2007). The core of the "bargain between parties" in determining the intent to injure element of mail fraud is the commercial exchange between them. See *United States v. Novak*, 443 F. 3d 150 (2d Cir. 2006); *United States v. Regent Office Supply Co.*, *supra*; *Starr v. United States*, *supra*; *United States v. Shellef*, *supra*; *United States v. Binday*; *United States v. Frank*, 156 F. 3d 332 (2d Cir. 1998).

Thus, in *Regent Office Supply*, stationary salesmen lied to curry favor with their customers, but did not misrepresent "the quality, adequacy or price of the goods themselves." *Id.* at 1176-77, 1179. The Second Circuit accordingly held that these misrepresentations did not "go to the nature of the bargain"—money in exchange for the stationary described to the customers—and therefore did not establish an intent to defraud. *Id.* at 1179-82.

Similarly, in *Starr,* lettershoppe owners undertook to sort, label, and package their customers' mail. *Id.* at 96. The customers were charged the amount of the postage plus a fee for the lettershoppe's services.  *Id.* The lettershoppe defendants, however, boosted their profit margins by accepting payment from the customers based on the amount of postage, and then burying the customers' high-rate mai, thus pocketing the difference. *Id.* The court held that although the customers were deceived, the deceit did not "affect the very nature of the bargain itself"—money in exchange for mailing services—because the customers paid what they were supposed to pay—the higher rate

postage amount—and defendants "did in fact mail their customers' brochures promptly as promised and caused them to arrive at the correct destination." *Id*. at 98-99.

In *United States v. Paccione*, 949 F.2d 1183 (2d Cir. 1991), the defendants undertook to dispose of medical waste. *Id*. at 1188. Such disposal operations were strictly regulated and haulers had to be specially licensed. *Id*. The defendants' company falsely represented itself as properly licensed and highly skilled, and charged medical facilities a premium for disposal in compliance with the exacting regulatory standards. *Id*. at 1189-90, 1196. The Second Circuit held that the object of the bargain—that is, "what [the customers] paid for"—was "careful, competent, and licensed services, together with a reduction of the risk of civil and criminal penalties for improper disposal." *Id*. at 1197. There, the court found the requisite fraudulent intent because, unlike in *Regent Office Supply* and *Starr*, the defendants misrepresented the nature and quality of the services their customers were paying for. *Id*.

In *United States v. Frank*, 156 F.3d 332 (2d Cir. 1998) (*per curiam*), the defendants' company transported raw sewage for disposal at sea. *Id*. at 334. At one time, federal law required disposal just 12 miles from shore. *Id*. at 335. When the distance was increased to 106 miles, the company charged its customers two to four times more to meet the new requirement. *Id*. In practice, however, the company continued dumping waste "well short of the 106-mile site," and concealed this fact by falsifying records submitted to the customers. *Id*. The Second Circuit held that the object of the bargain was "disposal at the 106-mile site," and that the customers had "paid a premium for that service." *Id*. Because the defendants did not actually render the service "for which [the customers] had contracted and paid," the trial evidence established the requisite intent to defraud.

11

In *United States v. Walker*, 191 F.3d 326 (2d Cir. 1999), the defendant was an immigration attorney who charged "substantial fees" for asylum applications. *Id*. at 336. Rather than prepare applications containing the narrative provided by each client, however, the defendant used the same bogus narratives in one application after another. *Id*. at 331, 336. The Second Circuit held that because the defendant misrepresented "the nature and quality of the legal services [he was] providing" in exchange "for a hefty fee," his deception went to an essential element of the bargain—large fees in exchange for expert legal services—and therefore sufficiently established an intent to defraud. *Id*. at 335-36.

In *United States v. Novak*, 443 F.3d 150 (2d Cir. 2006), construction contractors agreed to settle their breaches of a collective-bargaining agreement by making certain payments for hours not actually worked by union members. *Id*. at 153-54. The recipients of those payments made kickbacks to the defendant, a union leader. *Id*. at 154. Had the contractors known about the kickbacks, the government alleged, they would not have made the settlement payments they agreed to, since doing so would expose them to criminal liability. *Id*. at 157. Nevertheless, the Second Circuit held that the kickbacks did not implicate "an essential element" of the contractors' bargain with the union—settlement payments in exchange for labor peace—and so did not establish an intent to defraud. *Id*. at 159.

Applying the Second Circuit decisions focusing on the core economic exchange between parties in agreement in determining whether a false representation was sufficient to constitute an intent to injure, Judge Preska in *United States v. Davis*, U.S. Dist. Lexis 122643 (S.D.N.Y. 2017) set aside a mail fraud conviction after trial on Rule 29 and Rule 33 grounds. The indictment there charged Davis, the owner of a

construction company, with false representations to the Port Authority as to percentage usage of minority business enterprise subcontractors in its construction work done for the Port Authority. Analyzing the agreement between the parties, the court concluded that the "Port Authority received the full benefits of the bargain with Defendants." That bargain, as set forth in the contract between the Port Authority and the construction company, was payment of money by the Port Authority to the contractor for building steel decking. The court ruled that contract provisions requiring contractors to hire minority contractors for portions of the work in accordance with state regulations "were not essential elements of Defendant's bargain with the Port Authority."

The teaching of these cases is that in order to determine whether false representations, standing alone—even those misrepresentations which induce a party to enter an agreement—are sufficient to establish the intent to injure element of mail fraud, it is necessary to identify the core economic exchange between the parties. *Regent Office Supply* (money for stationary); *Starr* (money for mailing services); *Davis* (money for construction of steel decking); *Paccione* (money for proper disposal of medical waste); *Frank* (money for proper disposal of sewage); *Shellef* (money for an industrial solvent, CFC-113); *Novak* 443 F.3d at 150 (money for ability to hire non-Union labor, as per CBA);.

Here, the commercial exchange at issue is the one between the insured and the insurer: the No Fault Law requires motorists to purchase personal liability automobile insurance, and in exchange for those premiums, the automobile insurance company must promptly pay claims for medically necessary treatments.  When the insured assigns his rights to reimbursement of medically necessary treatments to a medical provider, the medical provider, as assignee, simply steps into the shoes of the insured.

13

See *BSP Agency LLC v. Katzoff*, 632 B.R. 448, 2021 Banks. Lexis 21 (U.S. Bankruptcy Court, S.D.N.Y. 2021); *O'Brien v. Argo Partners, Inc.,* 2d F. Supp. 2d 528, 535 (E.D.N.Y. 2010).  As an assignee, the medical provider's obligations under the core economic bargain between the insured and the insurer are no greater and no less than that of the insured.

   The New York State regulation making a layperson-owned medical corporation ineligible for payment of claims—even for legitimate and necessary treatments—is not part of the contract between the insurer and the insured individuals.   It exists independent of the agreement between the insurer and the insured.  This point is driven home by the New York State Attorney General in the *amicus curiae* brief filed on behalf of the New York State Department of Insurance in the New York Court of Appeals in *State Farm Mut. Auto. Ins. Co. v. Mallela*, 4 N.Y. 3d 313 (2005)**,** stating at page 15:

> "Critically, this provision [the ineligibility regulation] applies only where health care providers seek reimbursement from insurers after assignment of a claim by an injured person; it does not affect the payment of claims to the injured person herself."

   The regulation was not promulgated to benefit insurers or to define the bargain between the insurer and insured, but rather to safeguard the State's interest in prohibiting the corporate practice of medicine.  As stated by the New York State Attorney General in his *amicus curiae* brief in *Mallela,* this regulation "serves[s] to protect the public and ensure the quality and integrity of medical services provided through PCs, by enforcing the deeply-rooted prohibition against the corporate practice of medicine." *Id* at 5. That insurers incidentally benefit from this prohibition, by gaining the right through civil litigation to withhold payment from, or recover payments made to layperson owned medical corporations, does not make that prohibition part of the

14

economic exchange between the insurer and the insured, in whose shoes the assignee medical corporation stands.

Accordingly, the false representation alleged here—that only licensed health care professionals owned the no fault clinics—is not a sufficient basis to establish federal health care fraud because that misrepresentation is not even part of the bargain between the parties, and *certainly* does not go to the core of the bargain between the insurer and the insured.[3]  See, *supra*; *United States v. Starr*, *supra*; *United States v. Shellef*, *supra*; *United States v. Regent Office Supply Co.*, *supra*.

There are previous decisions in this Circuit upholding charges of defrauding insurers on reimbursement claims based upon false representations by PCs as to whether licensed medical practitioners owned the PCs.  However, none of those opinions addressed the argument raised here.

In *United States v. Gabinskaya*, 829 F. 3d 127 (2d Cir.  2016) the defendant challenged the sufficiency of the evidence in establishing the layperson ownership of Dr. Gabinskaya's PCs.  The defendant did not raise the question as to whether false representations about ownership were essential to the bargain between the insurer and insured, and therefore sufficient to establish the scheme to defraud element of the federal fraud statutes at issue.

In *United States v. Zemlyansky*, 945 F. Supp. 2d 438 (S.D.N.Y. 2013), Judge Oetken denied a pre-trial motion to strike part of the mail and health care fraud charges based on alleged false representations as to the ownership of the PCs seeking reimbursement on claims assigned to them by insured individuals.  Judge Oetken's

---

[3] In contrast, false representations as to the necessity as to the medical services provided in the claim for reimbursement—one of the other bases for the count one fraud charge as set forth in the Indictment—*do* go to the core economic exchange between the insurer and the insured.

opinion in *Zemlyansky* addressed several arguments to strike the part of the fraud charges before him concerning ownership of the PCs in *Zemlyansky*.  None of Judge Oetken's rulings squarely address the issues raised here, however.

First, Judge Oetken rejected a defense argument that the alleged false representation as to ownership of the PCs by medically licensed practitioners was not a false allegation.  *Zemlyansky,* 945 F. Supp.2d at 447-48. Next, the court turned to defendant's argument "that the alleged facts fail to support any contemplated injury to the insurers." *Zemlyanksy* at 446. Specifically, the court addressed the argument by defendant Zayonts[4] that the alleged false statements by the PCs to the insurers as to their ownership was legally insufficient to establish contemplation of injury on the grounds that:

> "there can be no injury because the insurer has an underlying obligation—unrelieved by *Regulation 65-3.16(a)(12)* or any other provision of New York Law—to make direct payment to the insured for treatment rendered by a licensed professional."

(*Zemlyanksy*, *Id*. at 448)

Relying on the New York Court of Appeals' decision in *Mallela* in rejecting this argument, Judge Oetken did not address the question of the core economic bargain between the contracting parties – the insurer and the insured.  Rather, in addressing the New York State regulation, Judge Oetken focused on the incidental "right" to insurers arising from the regulation—to withhold or recover payments to layperson-owned medical providers through civil litigation:

> "There, the Court of Appeals definitively held that, as a matter of New York law, fraudulently incorporated PCs 'are not entitled to reimbursement' by insurers. *4 N.Y.3d at 320*. Thus, irrespective of

---

[4] Defendant Zayonts was represented by Frederick P. Hafetz, the attorney for defendant Alex Gulkarov.

> whether a *patient* would be entitled to reimbursement if he had *not* assigned his claim to a PC, it is clear (and has been clear since 2005) that where such an assignment has occurred, and where the PC is not owned by a licensed professional, an insurer has a *right* to refuse payment on the claim. A misstatement about a PC's ownership, if made with the intent to deceive the insurer into making payment it would otherwise withhold, is a misstatement made with the intent to cause injury to the insurer. Whether properly characterized as a "windfall" or not, the insurer's entitlement to withhold reimbursement in these circumstances is an interest in money or property, the deprivation of which can be an injury under the fraud statutes."

*Id.* at 448.

Judge Oetken's opinion, however, *did not* address the issue raised here – whether a New York state regulation making certain assignees of a contract ineligible for reimbursement was essential to the bargain between *the insurer and the insured*. Thus, the court in *Zemlyansky* did not perform an analysis of the core economic bargain between the contracting parties required by the Second Circuit in order to determine whether the false statement concerning ownership goes to the "nature of the bargain itself" between the parties. *See, e.g., Regent Office Supply Co.*, 421 F. 2d at 1178-79. In contrast, Judge Preska in *United States v. Davis*, *supra*, as discussed above, did the necessary analysis of the core economic bargain between the contracting parties in concluding that a state regulatory provision was not part of the core bargain.

Moreover, one of the important premises of the *Zemlyanksy* decision on the intent to injure element of mail fraud was clearly erroneous. The opinion stated: "A misstatement about a PC's ownership, if made with the intent to deceive the insurer into making payment it would otherwise withhold, is a misstatement made with the intent to cause injury to the insurer." *Id.* at 448. This ruling is flatly contradicted by the Second Circuit law discussed above. For example, the Second Circuit stated in *Binday*

that proof "merely that the victim would not have entered into a discretionary economic transaction but for the defendant's misrepresentation" is insufficient to prove mail fraud. *Id.* at 570. See *Shellef*, 503 F. 3d at 109; *Regent Office Supply Co.*, 421 F. 2d at 1180-81.

Further, we submit that, if *Zemlyansky* can be construed as ruling on the issue raised in this motion, it was wrongly decided for all the reasons set forth in this memorandum.[5]

## CONCLUSION

For all these reasons, as well as those stated by the defendants in the companion case United States v. Pierre, 22 Cr. 19 (PGG), we respectfully request that the Court dismiss that part of Count One of the indictment that purports to state a Health Care Fraud in connection with the allegedly false statements as to the ownership of the No-Fault Clinics in this case, and we respectfully request that the Court strike these allegations from the Indictment.


Date:  October 18, 2022                     Respectfully submitted,
       New York, New York

                                            By:  _____s/s_____
                                                 Frederick P. Hafetz
                                                 Noah E. Shelanski
                                                 420 Lexington Avenue #2818
                                                 New York, NY 10170
                                                 917-841-1717
                                                 *Attorneys for defendant*
                                                 *Alexander Gulkarov*

---

[5] *Zemlyansky* also addressed a third argument which was different than the arguments raised here. The court rejected an argument by defendant Danielovich there that "an insurer's right to withhold payment is not a cognizable property interest under the mail fraud statute."